**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| Genesis Health Care, Inc., | ) Civil Action No. 4:18-mc-235-RBH |
| | ) |
| Petitioner and Movant, | ) |
| | ) |
| vs. | ) **MOTION FOR PRELIMINARY** |
| | ) **INJUNCTION** |
| Alex M. Azar II, as Secretary of the United States Department of Health and Human Services, George Sigounas, as Administrator of the Health Resources and Services Administration, and Krista Pedley, as Captain in the United States Public Health Service and Director of the Office of Pharmacy Affairs in the Health Resources and Services Administration, | ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

Genesis Health Care, Inc. ("Genesis") hereby respectfully petitions this Court for a Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65. The basis of this motion is that Genesis has received additional correspondence from the Health Resources and Services Administration ("HRSA") imposing an unlawful definition of the term "patient" in its March 20, 2019 approval of Genesis' Corrective Action Plan. *See* March 20, 2019 correspondence at **Ex. 10** to the Amended Verified Petition for Judicial Review. As set forth in the Amended Verified Petition and Megna Declaration (**Ex. 13** to Amended Verified Petition), Genesis will suffer immediate and irreparable injury, loss, and damage if the Defendants require Genesis to comply with the terms of the March 20, 2019 correspondence.

### I. BACKGROUND

This matter involves an audit by HRSA of Genesis to evaluate compliance with the statutory requirements of the 340B Program. 42 U.S.C. § 256b(a)(5)(C). During the audit, and as

noted in the March 20, 2019 correspondence, HRSA is alleging that Genesis did not comply with the requirements of the 340B program by dispensing 340B medications to "ineligible patients." HRSA has based this finding on the following very explicit and narrow definition of a qualified 340B patient:

> While GHI's CAP has satisfactorily addressed the audit finding with respect to future implementation of the 340B Program, HRSA would like to clarify that in order for an individual to qualify as a 340B patient, GHI must have initiated the healthcare service resulting in the prescription, regardless if the patient had an unrelated billable FQHC encounter. A covered entity may refer one of its patients to an outside provider and receive documentation of that episode of care that results in a 340B eligible prescription. However, a referral that begins at a private practice to the covered entity, would not qualify a prescription written by the private practitioner as 340B eligible. GHI must be able to demonstrate that the individual first receives a health care service from a health care professional who is either employed by GHI or provides health care under contractual or other arrangements such as referral for consultation, which demonstrates responsibility for care remains with GHI, in order to meet the patient definition guidelines.

March 20, 2019 correspondence at **Ex. 10** to Amended Verified Petition at ¶ 2. This definition is in stark contrast to the plain language of the 340B statute, which simply requires the patient to be "a patient of the entity." 42 U.S.C. § 256b(a)(5)(B) ("**a covered entity shall not resell or otherwise transfer the drug to a person who is not a patient of the entity.**").

HRSA's overlay of narrow restrictions on the plain language of 42 U.S.C. § 256b(a)(5)(B) is also not reasonable when examined in context with the heading of subsection 256b(a)(5)(B). The heading of subsection 256b(a)(5)(B) is "Prohibiting resale of drugs" as follows:

> (B) Prohibiting resale of drugs
> With respect to any covered outpatient drug that is subject to an agreement under this subsection, a covered entity shall not resell or otherwise transfer the drug to a person who is not a patient of the entity.

42 U.S.C. § 256b(a)(5)(B). By the language of the heading, the clear intent of this subsection is to prevent the reselling of drugs to individuals who are not patients of the covered entity. This

subsection's intent is *not* to prohibit dispensing of 340B medications to the covered entity's patients, as HRSA is mandating through its "notices" and audits.

HRSA's significant narrowing of the Statute (42 U.S.C. § 256b(a)(5)(B)) was accomplished not through properly promulgated regulations but through a final guidance *notice* that transformed the phrase "patient of the entity" into a three-pronged "definition":

> Definition of a Patient
>
> An individual is a "patient" of a covered entity (with the exception of State-operated or funded AIDS drug purchasing assistance programs) only if:
> 1. the covered entity has established a relationship with the individual, such that the covered entity maintains records of the individual's health care; **and**
> 2. the individual receives health care services from a health care professional who is either employed by the covered entity or provides health care under contractual or other arrangements (e.g. referral for consultation) such that responsibility for the care provided remains with the covered entity; **and**
> 3. the individual receives a health care service or range of services from the covered entity which is consistent with the service or range of services for which grant funding or Federally-qualified health center look-alike status has been provided to the entity. Disproportionate share hospitals are exempt from this requirement.
>
> An individual will not be considered a "patient" of the entity for purposes of 340B if the only health care service received by the individual from the covered entity is the dispensing of a drug or drugs for subsequent self-administration or administration in the home setting.

Fed. Reg. 55156 (Oct. 24, 1996) (emphasis added).

Thus, in this action, HRSA is requiring Genesis to completely overhaul and dismantle its 340B program, from a process compliant with 42 U.S.C. § 256b(a)(5)(B) and dispensing medications to its patients ("**a patient of the entity**") to a very narrowed subset of patients who are "eligible" to receive 340B drugs because they are tightly in line with HRSA's non-compliant additional requirements, as set forth in paragraph 2 of its March 20, 2019 (attached as **Ex. 10** to Amended Verified Petition). *See* Megna Decl. at ¶¶ 16-19 (**Ex. 13** to Amended Verified Petition).

HRSA's current requirements of "covered entities" have radically changed the definition of § 256b(a)(5)(B)'s "patient of a covered entity." In doing so, HRSA has circumvented the critical safeguards contained in the Administrative Procedures Act. *Shalala v. Guernsey Memorial Hospital,* 514 U.S. 87, 99 (1995) (. . . Interpretive rules "do not have the force and effect of law and are not accorded that weight in the adjudicatory process.").

HRSA later issued guidance related to the 340B program in 2015, when HRSA filed notice of a 340B Drug Pricing Program Omnibus Guidance (hereinafter "Mega-Guidance"). 80 Fed. Reg. 52300-01 (Aug 28, 2015) (withdrawn). This 2015 Mega-Guidance, however, was officially withdrawn by HRSA on January 30, 2017[1] and has not been re-issued. In the withdrawn Mega-Guidance, HRSA further restricted the definition of a "covered entity patient" to the following:

> … [A]n individual will be considered a patient of a covered entity, on a *prescription-by-prescription* or *order-by-order basis*, if all of the following criteria are met:
>
> (1) The individual receives a health care service at a *covered entity site* which is registered for the 340B Program and listed on the public 340B database
>
> (2) The individual receives a health care service from a health care provider employed by the covered entity or who is an independent contractor of the covered entity such that the covered entity may bill for services on behalf of the provider.
>
> (3) *An individual receives a drug that is ordered or prescribed by the covered entity provider as a result of the service described* in (2). An individual will not be considered a patient of the covered entity if the only health care received by the individual from the covered entity is the infusion of a drug or the dispensing of a drug.
>
> (4) The individual receives a health care service that is consistent with the covered entity's scope of grant, project, or contract;
>
> (5) The individual is classified as an outpatient when the drug is ordered or prescribed. The patient's classification status is determined by how the

---

[1] OIRA Conclusion of EO 12866 Regulatory Review
https://www.reginfo.gov/public/do/eoDetails?rrid=126712

> services for the patient are billed to the insurer (e.g., Medicare, Medicaid, private insurance). An individual who is self-pay, uninsured, or whose cost of care is covered by the covered entity will be considered a patient if the covered entity has clearly defined policies and procedures that it follows to classify such individuals consistently; and
>
> (6) The individual has a relationship with the covered entity such that the covered entity maintains access to auditable health care records which demonstrate that the covered entity has a provider-to-patient relationship, that the responsibility for care is with the covered entity, and that each element of this patient definition in this section is met for each 340B drug.

80 Fed. Reg. 52300-01 (Aug 28, 2015) (withdrawn). Despite having been withdrawn, it is clear that HRSA has incorporated this even narrower definition of "patient" into its current audit approaches, as evidenced by the HRSA March 20, 2019 correspondence (**Ex. 10** to Amended Verified Petition).

## II.     Grounds for Relief

Genesis' Motion for Preliminary Injunction is timely and appropriate because it just received a final statement from HRSA in the form of the March 20, 2019 correspondence in which it is clear that HRSA is imposing an unlawful standard based on a significant narrowing of the clear statutory language of 42 U.S.C. § 256b(a)(5)(B). *See* **Ex. 10** to Amended Verified Petition. If the March 20, 2019 correspondence is allowed to stand, Genesis' patient population will be subject to severely restricted access to 340B medications based on this final correspondence. *See* Megna Decl. at ¶¶ 16-19 (**Ex. 13** to Amended Verified Petition). Genesis, in turn, will be forced to dismantle and reconfigure its 340B program and potentially repay years of discounts to manufacturers. *See* **Ex. 10** to Amended Verified Petition; Megna Decl. at ¶¶ 16-19 (**Ex. 13** to Amended Verified Petition). If Genesis is forced to repay years of discounts to manufacturers, it would foreseeably impact Genesis' ability to continue to provide vital primary and preventive healthcare to patients, regardless of their health insurance and ability to pay, in

the South Carolina Pee Dee Region and in Walterboro, South Carolina. Megna Decl. at ¶¶ 16-19 (**Ex. 13** to Amended Verified Petition).

### III. Conclusion

For the reasons set forth, Genesis respectfully asks the Court to restrain the Defendants from enforcing its audit findings until such time as Genesis' request for declaratory and injunctive relief from this court, declaring that the requirements of 42 U.S.C. § 256b(a)(5)(B) must be afforded its ordinary and plain meaning, can be presented to the Court.

GRIFFIN & DAVIS, LLC

By: s/JIM GRIFFIN
Jim Griffin
Federal Bar No. 1053
E-Mail: jgriffin@griffindavislaw.com
Marlboro Building
1116 Blanding Street
PO Box 999
Columbia, SC 29202
(803) 744-0800

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: s/Alice V. Harris
Daniel J. Westbrook
Federal Bar No. 5078
E-Mail: dan.westbrook@nelsonmullins.com
Alice V. Harris
Federal Bar No. 6044
E-Mail: alice.harris@nelsonmullins.com
1320 Main Street / 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, SC 29201
(803) 799-2000

*Attorneys for Petitioner and Movant Genesis Health Care, Inc.*

Columbia, South Carolina

May 24, 2019